IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:02CR177 |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| TIMOTHY A. KRUSE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's objection, Filing No. 27, to the Report and Recommendation ("R&R") of the United States Magistrate Judge ("magistrate"), Filing No. 24. The magistrate recommended that this court deny defendant's motion to dismiss, Filing No. 17. Defendant was indicted on June 19, 2002, for conspiracy to manufacture methamphetamine in violation fo 21 U.S.C. § 841(a)(1) and 846, and for possession of equipment, chemicals and materials used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6). Defendant's motion to dismiss is premised on the assertion that the government has abridged his Constitutional right to a speedy trial.[1]

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report and recommendations to which the parties object. *United States v. Lothridge*, 324 F. 3d 599, 600-01 (8th Cir. 2003). The court has conducted a *de novo* review of the record pursuant to 28 U.S.C. § 636(b)(1)(A), including the transcript of the hearing on the motion ("Hr'g Tr."). Filing No. 26.

---

[1] No violation of the Speedy Trial Act is at issue. Under the Speedy Trial Act ("the Act"), a federal criminal defendant must be brought to trial within seventy days of the filing of his indictment or his arraignment, whichever is later. 18 U.S.C. § 3161(c)(1); *United States v. Yerkes*, 345 F.3d 558, 561 (8th Cir. 2003). Accordingly, the speedy trial act clock began to run on the date of defendant's arraignment in federal court. Sixth Amendment challenges receive review that is separate and distinct from that required under the Speedy Trial Act. *United States v. Thirion,* 813 F.2d 146, 154 (8th Cir. 1987).

### I. Background

There is essentially no dispute about the facts relevant to this determination. Briefly, the evidence shows that defendant Kruse was arrested by Omaha Police and charged in Douglas County, Nebraska District Court ("state court") with manufacturing methamphetamine on October 3, 2001. Filing No. 26, Transcript of Motion Hearing, ("Hr'g Tr.") at 8. At the time of his arrest, Kruse's vehicle was searched and items were seized from his vehicle. *Id.* at 10-11. The property that Kruse had been observed leaving immediately prior to his arrest was also searched and items were seized from that location. *Id.* at 11. Kruse allegedly consented to the search of his vehicle. *Id.* at 10. Omaha Police Detective Mark Lang compiled and wrote reports on the arrest and investigation. *Id.* at 12. Kruse was released on bond shortly after the arrest. The state court charges were dismissed in early June 2002. *Id.* at 14. State court booking records show that Kruse reported address to be 2204 Avenue D, Council Bluffs, Iowa. *Id.*

On June 19, 2002, a sealed indictment was filed in this court and an arrest warrant was issued. Filing No. 1. There was no further action on the case until January 31, 2006, when the federal indictment was unsealed and a Writ of Habeas Corpus Ad Prosequendum was issued to the Warden of the Pottawattamie County Jail, Council Bluffs, Iowa, to compel the appearance of Kruse in this court. Filing No. 6. On February 3, 2006, defendant was arrested on the federal warrant and arraigned in this court. Filing No. 7, Arraignment, Filing No. 12, Arrest Warrant.

The evidence adduced at the hearing shows that Kruse was arrested in Iowa on August 20, 2004 for operating a motor vehicle when his license had been barred. *Id.* at 33. He was sentenced on October 29, 2004 to 120 days' incarceration for the offense, of which 114 days were suspended. *Id.* On October 30, 2005, Kruse failed to appear at a


compliance hearing.  Hearing Exhibit ("Hr'g Ex.") 1.  A warrant for his arrest for a probation violation was issued and Kruse was arrested by Council Bluffs, Iowa police on November 27, 2005. *Id.*

The evidence shows that defendant continued to live at the address he had reported to Douglas County officials until his arrest in Iowa in 2005.  Hr'g Tr. at 31.  He was employed and listed the same address in employment and tax documents.  *Id.*  There is no evidence to show that either federal or state law enforcement officers made any attempt to locate Kruse until late 2005, when federal authorities were notified by Pottawattamie County officials of Kruse's arrest and incarceration in Pottawattamie County.  Omaha Police detective Mark Lang testified that he made no attempt to locate Kruse and the Omaha Police Department did not enter any warrant into the NCIC computer database. *Id.* at 16.  Deputy United States Marshal Lloyd Trout testified that the Marshal's Office did not enter the warrant into the NCIC database at the time the warrant was issued.  *Id.* at 26.  There is no evidence to establish that the warrant was ever entered in the database, or if so, when it was entered.  It is undisputed that Kruse was never referred to or pursued by the Fugitive Task Force.  *Id.* at 25.

Kruse testified that he was not aware of the federal indictment until the Pottawattamie County Jail received the writ ordering his appearance in federal court. *Id.* at 30-31.  He testified that he does not recall the specifics of any conversations he may have had or statements he may have made at the time of his arrest by Omaha Police in 2001.  *Id.* at 31.

The magistrate found that the defendant's right to a speedy trial had not been violated. *Id.* at 45.  The magistrate found the duration of the delay (over forty-three months or three years, seven months) was "clearly and uncommonly long," and also found that the

government was solely responsible for the delay. *Id.* at 42-43. The magistrate found that defendant had asserted his right to a speedy trial in a timely fashion. *Id.* at 43. He concluded, however, that there had been no showing of prejudice to the defendant occasioned by the delay. *Id.* at 44. To the extent that prejudice could be presumed by the length of the delay, the magistrate found that the government had rebutted the presumption. *Id.* at 45.

## II.   Discussion

The Sixth Amendment right to a speedy trial attaches at the time of arrest or indictment, whichever comes first, and continues until the trial commences. *United States v. Sprouts*, 282 F.3d 1037, 1042 (8th Cir. 2002). A defendant may invoke the Due Process Clause of the Fifth Amendment to challenge delay both before and after official accusation.[2] *Doggett*, 505 U.S. 647, 655 n.2 (1992); *United States v. MacDonald*, 456 U.S. 1, 7 (1982).

In considering a claim that postindictment delay infringed a defendant's speedy trial right, the court examines the four criteria set forth in *Barker v. Wingo,* 407 U.S. 514, 530 (1972). The court determines: (1) whether delay before trial was uncommonly long; (2) whether the government or the criminal defendant is more to blame for that delay; (3) whether, in due course, the defendant asserted his right to a speedy trial; and (4) whether the defendant suffered prejudice as a result of the delay. *See Doggett v. United States*, 505 U.S. 647, 651 (1992). None of the factors is dispositive. *See Barker*, 407 U.S. at 533.

---

[2]In contrast, a challenge to preindictment delay is cognizable only under the Due Process Clause of the Fifth Amendment, and not under the Sixth Amendment. *United States v. Sprouts*, 282 F.3d 1037, 1040 (8th Cir. 2002).

4

An "[u]nreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including 'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (*quoting Barker*, 407 U.S. at 532). Of these harms, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. A defendant who has not been subjected to pretrial detention and who was unaware of unresolved charges against him can only rely on the impairment of his defense as prejudice. *See id.* (noting that "[o]nce triggered by arrest, indictment, or other official accusation, however, the speedy trial enquiry must weigh the effect of delay on the accused's defense just as it has to weigh any other form of prejudice that *Barker* recognized").

The inquiry into the first *Barker* factor—the length of the delay—functions as both a gatekeeper for the speedy trial analysis, and as one of the factors that determine whether a violation occurred. *See id.* at 651. If the delay is not excessive, the speedy trial inquiry ends there and the court does not proceed to a balancing of the other factors. *See id.* at 651-52. A delay is unreasonable enough to trigger the *Barker* balancing inquiry "as it approaches one year." *Id.* at 652 n.1. The delay in this case satisfies the gatekeeping threshold.

With respect to the second factor, "'different weights [are to be] assigned to different reasons' for delay." *Doggett*, 505 U.S. at 657 (*quoting Barker*, 407 U.S. at 531). The success of a speedy trial claim hinges, to a great extent, on the government's conduct. *Id.* at 656 (stating that '[i]f the government diligently pursues a defendant from indictment to arrest, a speedy trial claim will always fail without a showing of actual prejudice").

5

Intentional postponement of prosecution "to gain some impermissible advantage at trial" will weigh heavily against the government. *Id.*

Between diligent prosecution and bad-faith delay is government negligence in bringing an accused to trial. *Id.* Negligence is obviously weighed more lightly than a deliberate intent to harm the accused's defense, but "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. " *Id.* at 657; *see also Barker,* 407 U.S. at 531 ("A more neutral reason such as negligence . . . should be weighted less heavily [against the government than bad faith] but nevertheless should be considered since the ultimate responsibility for such [negligence] must rest with the government rather than with the defendant"). Tolerance of negligence "varies inversely with its protractedness and its consequent threat to the fairness of the accused's trial." *Id.* at 657 (citations omitted). Moreover, negligence is not "automatically tolerable simply because an accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657.

Significantly, there are valid reasons, such as missing witnesses or the protection of an ongoing investigation that can justify appropriate delay. *Barker*, 507 U.S. at 531. In addition, postindictment delay that is attributable to a defendant's own actions, such as deception or evasion of arrest, will not violate the Sixth Amendment right to a speedy trial. *United States v. Jones*, 23 F.3d 1407, 1408 (8th Cir. 1994).

The third factor of the balancing test is whether the "defendant, in due course, asserted his right to a speedy trial." *Doggett*, 505 U.S. at 651. The defendant's assertion of his speedy trial right is "entitled to strong evidentiary weight." *Barker,* 407 U.S. at 531-32; *Doggett*, 505 U.S. at 653-54 (stating that defendant "is not to be taxed for invoking

6

his speedy trial right only after his arrest" where government introduced no evidence challenging testimony that defendant did not know of the indictment).

Finally, a court must consider whether the defendant was prejudiced by the delay in his arrest. The need for specific evidence of prejudice diminishes when the first three *Barker* factors weigh heavily against the government. *See Doggett*, 505 U.S. at 654-56 (presuming prejudice from an eight-and-a-half-year delay). Also, the presumption that pretrial delay has prejudiced the accused intensifies with the length of the delay. *Id.* at 652, 656 (recognizing that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove, or for that matter, identify").

The court first finds that the first three factors weigh heavily in favor of defendant. A delay of three years, seven months between indictment and arrest on the federal charge is inordinately long. The delay was attributable only to the government; Kruse did not attempt to hide, to evade authorities, or to flee. No portion of the lengthy interval can be attributed to the defendant's conduct. The government has propounded no reasons to justify or assuage its neglect. Kruse asserted his right to a speedy trial in a timely manner. Accordingly, the evidence supports affording Kruse a presumption of prejudice.

The court need not rely on the presumption, however, because the court finds that Kruse has shown actual prejudice as a result of the lengthy delay. Kruse was arrested and charged in state court before he was indicted in this court. The events connected to the crime, the investigation, and the arrest are remote. Because Kruse was first prosecuted in state court, he made certain statements to law enforcement officers, including a purported consent to search, on which the government intends to rely in the prosecution of the case. The statements Kruse made to state law enforcement officials were memorialized in police reports. Government witnesses can refer to those records to

7

refresh their recollections of the events. In contrast, defendant has no actual recall of the events, nor can he rely on any contemporaneous written notes. Defendant is at a distinct disadvantage with respect to any challenge he might make to the admissibility of statements or evidence.

Moreover, government testimony can be bolstered by documentary evidence which will serve to highlight defendant's lack of recall. To the extent that the defendant could refer to police reports to refresh his recollection, the police reports only contain the government's version of events. The government's contention that testimonial and physical evidence has been preserved relates only to its own evidence, not to anything that would or could exculpate the defendant. Accordingly, the court finds that Kruse has shown actual prejudice caused by the government's delay. He has shown that the passage of time will impair his defense.

Alternatively, even if actual prejudice had not been demonstrated, the court would nevertheless find Kruse entitled to relief. Negligence "unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice." *Doggett*, 505 U.S. at 657-58 (noting that "such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows"). The government's failure to diligently prosecute this case resulted in a delay sufficient to warrant relief even absent a showing of prejudice. Nothing presented by the government rebuts either presumed or actual prejudice to the defendant, and there are no extenuating circumstances that would explain, ameliorate, or lessen the effect of the delay. The government's unexcused and inexcusable negligent failure to prosecute this case produced a delay almost four times as long as that sufficient to trigger speedy trial review. With such a lengthy delay, "when the

8

presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief." *Id.* at 658 (footnote and citation omitted) (involving six-fold delay).

In finding that Kruse is entitled to relief, the court is mindful that "persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it." *Id.* at 658. Also, "[c]ondoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority." *Id.* at 657. Accordingly, the court finds that defendant's objection to the R&R should be sustained and defendant's motion to dismiss should be granted.

IT IS ORDERED that:

1. The defendant's objection (Filing No. 27), to the report and recommendation of the magistrate (Filing No. 24) is sustained;

2. The defendant's motion to dismiss the indictment (Filing No. 17) is granted; and

3. This action is dismissed.

DATED this 17th day of May, 2006.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

9